UNITED STATES, Appellee

v

STANLEY KINARD, Specialist Four, U. S. Army, Appellant

21 USCMA 300, 45 CMR 74

No. 24,227

April 14, 1972

*Richard E. Crouch, Esquire,* and *Captain Joseph V. Aprile, II,* argued the cause for Appellant, Accused. With them on the brief was *Captain Peter D. Pettler.*

*Captain Gordon F. Bailey, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain Richard L. Menson,* and *Captain Merle F. Wilberding.*

## Opinion of the Court

DUNCAN, Judge:

We granted review of the appellant's case to consider two allegations of error:

I. Whether the rights of the appellant under Article 38 and the Sixth Amendment were violated when he was forced to go to trial without adequate opportunity to procure civilian counsel.

II. Whether the issue of appellant being afforded sufficient opportunities to procure individual counsel was resolved against the appellant entirely on the basis of very dubious hearsay evidence.

An exposition of the numerous charges upon which the appellant has been found guilty is unnecessary for a resolution of the granted issues. The record relative to these matters was developed in three sessions of court conducted under the authority of Article 39(a), Uniform Code of Military Justice, 10 USC § 839.

On May 22, 1970, the court was convened with the detailed military judge, Colonel Hammack, presiding. When the military judge explained to the appellant his right to counsel of his choice, the appellant expressed dissatisfaction with his appointed military counsel and requested a conference with a legal advisor. After directing military counsel to assist the appellant in his effort to secure counsel of his choice, the military judge recessed the proceedings.

Upon the reconvening of the court on June 16, the appellant claimed that he had not been properly afforded the opportunity to secure counsel, in accordance with the previously given directions of the military judge. Testimony was presented by the Government detailing the efforts put forth in the appellant's behalf to obtain counsel of his choice. The appellant disputed the correctness of this testimony and asserted that his request to have a field grade officer appointed to defend him were ignored. In the course of this proceeding, he also requested that another judge be assigned to preside over the trial. When this request was denied by Colonel Hammack, the appellant refused to remain in the courtroom. When it became necessary to forcibly detain him, Colonel Hammack directed that further efforts be made to assist appellant in obtaining counsel of his choice and recessed the hearing.

The third Article 39(a) session was convened on July 24, 1970, with Lieutenant Colonel Murdock presiding. Captains Swayne and Webb, detailed as defense counsel in a new convening order, were present to represent the appellant. When the military judge undertook to ascertain from the appellant whether he was aware of and understood his right to counsel, the appellant maintained "I haven't had time in a proper way to get in contact with my civilian lawyer." He contended that around May 23 he had written a letter in an effort to secure the services of a civilian lawyer in Michigan but had not, as of that date,

heard from him. Appellant had, however, heard from his brother in Washington, D.C., that the lawyer was having difficulty in getting to Vietnam, the situs of the trial. At that point, the appellant requested that he be tried in the United States in order that his lawyer and a number of defense witnesses could be more readily available. The appellant expressed his unwillingness to go to trial represented by Captains Swayne and Webb.

After the Government had presented evidence as to the additional efforts made to secure military counsel acceptable to the appellant, defense counsel disclosed that while he was ready to proceed with trial, his only knowledge of the case was that which he had obtained by examination of the Article 32 investigation and other evidence and by talking with witnesses. According to counsel, the appellant would not discuss the case with him. "I do not know his side of the story." Defense counsel requested that one more opportunity be given the appellant to secure counsel of his choice. Counsel attributed the previous delay to the fact of accused's confinement, the ill health of his brother who is coordinating the matter of obtaining civilian counsel, and the time lag in delivery of mail to Vietnam. With regard to the latter, defense counsel disclosed that a letter to the appellant, postmarked June 24, was not received by him until the day of this hearing, July 22. Consequently, the letter requesting civilian counsel, which was allegedly sent on May 23, and replies thereto could similarly have been delayed. Captain Swayne then stated:

". . . I would think that Captain Webb and myself would certainly be more than willing to assist him if he wants us to, but again this goes to the background he has no feeling of trust from the people of the 101st. I would think the government, you should allow him one more opportunity to obtain civilian counsel.

"MJ: Well, the court has asked for some assurance or something on someone's part that this will be

done, that another continuance will show some effort. I didn't ask for success, I asked for some show of efforts and Specialist Kinard evaded the questions every time I asked. I looked for some indication that he would be willing to demonstrate what he intended to do in this trial, but he was not willing to give me any assurance.

"DC: Your Honor, I think the reason is for the reasons he has stated.

"MJ: Well, I am not a member of the 101st.

"DC: I know you're not, sir.

"TC: I think one thing we must consider is how reasonable is this contention. He asked for help from outside of the 101st and he got it.

"MJ: I am still prepared to say that if Specialist Kinard could give assurance that at sometime in the near future he would be prepared to go to trial with any counsel that reasonable delay would certainly, in spite of what's gone before, would benefit from such a thing. Defense, you have anything?

"DC: Just a minute.

"(Accused and his counsel confer)

"DC: No, sir, we have nothing further.

"MJ: All right. I am prepared to rule. Specialist Kinard, I am going to require that this trial proceed today and that you be represented by Captain Swayne and Captain Webb. I encourage you, and I mentioned it before, to take advantage of their help. They've sworn to uphold the law and they have no allegiance to the 101st Airborne Division that imposes any responsibility. They are appointed to help you to try to get you off and defend you in every way legal and ethical. They can best do so, and I encourage you to help them, if you do need time to talk to them during the trial, within reason, I will see you get an op-

portunity to do so. You understand that?

"ACC: No, I don't.

"MJ: What don't you understand? Ask me a question. I am indicating that you have had enough time to get counsel and we are going to proceed to trial with the counsel you have appointed.

"ACC: I don't think I have had enough time.

"MJ: Well, that was my decision to make today and I heard your side of it and I appreciate that you don't agree with me, but that's my decision and we are ready to proceed. Anybody have anything else?

"TC: Sir, do you feel that possibly a little bit further in-depth conversation with the defense counsel as to their preparation is needed here?

"MJ: Well, I inquired, have you had ample time and opportunity to consult with the witnesses in this case?

"DC: I have, yes, sir. Captain Webb, too, I believe.

"MJ: Are you prepared to go forward here today?

"DC: Yes, sir.

"MJ: Anything else?

"TC: No, sir. . . ."

We unhesitatingly agree with the contention of appellate defense counsel that "it ought to be an extremely unusual case when a man is forced to forego civilian counsel and go to trial with assigned military counsel rejected by him." The right and opportunity of one accused of crime to select individual counsel of his choice, military or civilian, is "a most valuable right accorded him by the law." United States v Donohew, 18 USCMA 149, 152, 39 CMR 149 (1969). See also Article 38(b), Code, supra, 10 USC § 838. Cf. Gideon v Wainwright, 372 US 335, 9 L Ed 2d 799, 83 S Ct 792 (1963); Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602

(1966). As this Court stated in United States v Donati, 14 USCMA 235, 239, 240, 34 CMR 15 (1963):

"An accused brought to trial by court-martial is entitled to be represented 'by civilian counsel if provided by him.' Uniform Code of Military Justice, Article 38, 10 USC § 838; cf. United States v Tellier, 13 USCMA 323, 32 CMR 323 [1962].

. . . .

"Implicit in the right to be represented by civilian counsel is the opportunity to exercise this right. Powell v Alabama, 287 US 45, 77 L Ed 158, 53 S Ct 55 (1932); United States v Potter, 14 USCMA 118, 33 CMR 330 [1963]; United States v Evans, 1 USCMA 541, 4 CMR 133 [1952]. Whether the accused was accorded that opportunity is the controlling factor here."

See also United States v Hartfield, 17 USCMA 269, 38 CMR 67 (1967); United States v Williams, 18 USCMA 518, 40 CMR 230 (1969); United States v Murray, 20 USCMA 61, 42 CMR 253 (1970); United States v Gaines, 20 USCMA 557, 562, 43 CMR 397 (1971). Cf. Johnson v Zerbst, 304 US 458, 464, 82 L Ed 1461, 58 S Ct 1019 (1938); Glasser v United States, 315 US 60, 76, 86 L Ed 680, 62 S Ct 457 (1942).

In this case, as in *Donati,* the controlling factor is whether the appellant was accorded the opportunity to secure counsel of his choice. In both cases trial was held outside the continental limits of the United States—Donati was tried in Spain, this appellant in Vietnam. Also, in both cases a requested continuance to await the arrival of civilian counsel was denied by the presiding officer. The issue in *Donati* concerned the admissibility of two pretrial depositions taken over the objection of appointed military counsel. The latter averred " 'that the taking of the deposition be postponed until the accused's civilian attorney has an opportunity to either conduct or defend the accused at the taking of his deposition or indicate his desire not to do so.' " *Id.,* at page 238. Upon

the two transcripts being offered in evidence at the trial, each objection was renewed by Donati's civilian counsel, who pointed out that Donati had then desired individual counsel to be present, had been engaged in negotiations to retain him, but had been refused a continuance until his services could be obtained. Civilian counsel was then in the United States. At trial the objections were overruled and the depositions were received in evidence. In holding the depositions inadmissible, this Court unanimously declared:

"Donati, through his appointed counsel, made known to the Government's representative the fact that he was in the process of retaining civilian counsel and desired either to have him present or to obtain his advice prior to the taking of the depositions. That he was acting in good faith is shown by his later representation by such counsel at the trial and, indeed, upon this appeal. There is nothing in the record to demonstrate that he sought 'only to vex the Government with needless delay in order to avoid the certain consequences of his . . . misconduct.' United States v Daniels, 11 USCMA 52, 55, 28 CMR 276, 279 [1959]. Rather, it appears that he was genuinely desirous of exercising his unfettered right to counsel and, as opposed to his privilege to do so, the Government relied only upon simple inconvenience to it as justification for forcing him to proceed. We are, therefore, of the opinion that the accused was improperly deprived of his right to retain and consult with counsel concerning the taking of the deposition and to be represented thereat by the attorney of his own choice. The evidence thus garnered was, by reason of such denial, inadmissible at the trial. United States v Miller, . . . [7 USCMA 23, 21 CMR 149 (1956)]; United States v Potter, supra." [*Id.,* at page 240.]

Should the same result be reached in this case as in *Donati?* We think

not. The facts are materially different.

Evidence of record reflects that the appellant from the date of the Article 32 investigation on April 12, 1970, until trial on July 24, 1970, had approximately seven military defense counsel assigned or offered to him, all of whom he rejected. He was represented at the Article 32, conducted on April 12 and May 1, by Captain Gibson. Upon an expression of dissatisfaction with such counsel, he requested, alternatively, Captain Webb. When the court convened with the initial Article 39 (a) session, he expressed dissatisfaction with Captain Webb and attempted to dismiss him. Captain Burns, acting Chief of Military Justice, interviewed the appellant pertaining to his request for a field grade officer to conduct his defense. The appellant was offered the services of Captain Brailsford, but declined his assistance and indicated that he did not desire any legal representation from the 101st Airborne Division or any assistance in obtaining civilian counsel, which assistance had also been offered. Efforts were made at higher command levels to obtain a field grade attorney but none were reasonably available. Captain Burns later presented the appellant with a list of three majors from which to choose. The appellant declined to select a counsel. The proffer of a second list, containing the names of all military lawyers in Vietnam, was similarly refused. Both lists were left with the military police at the stockade. Captain Scanlon was made available and developed an attorney-client relationship with the appellant but upon the court's reconvention on June 16, the appellant dismissed him also. Scanlon was prepared to defend the appellant in court. At that time the appellant also demanded that a new judge be appointed.

After Captain Scanlon was dismissed, Captain Swayne was appointed. Swayne and Webb defended the appellant at trial. A Captain Vercimak had been on orders to defend the appellant and was present at the June 16 session; however, he was rotated to the United States and did not serve at the trial.

During that portion of the third Article 39 (a) session in which defense counsel's request for a continuance to allow the appellant additional time to secure the services of civilian counsel was being considered, the appellant replied in the negative when asked by the military judge whether he was willing to allow Captains Swayne and Webb to assist him in obtaining civilian counsel. He declared himself "perfectly capable of writing a letter." He expressed a belief that he thought he could get civilian counsel but did not know how long it would take as "I have never had to get a civilian counsel before."

The record also contains testimony from a military police desk sergeant that on or about May 22 he overheard another prisoner counselling the appellant as to various tactics the latter might employ in order to delay his trial. The allegedly suggested procedures were strikingly similar to the incidents which occurred in this case. The military judge was apparently referring to this testimony when he told the appellant: "Well, the indications are, there is some evidence the government put on would tend to indicate that you have a design not to be tried, to put it off as long as you can."

We need not decide whether the appellant was attempting to vex the Government with needless delay in order to avoid or put off the consequences of his misconduct. See United States v Daniels, 11 USCMA 52, 55, 28 CMR 276 (1959). While the testimony relative to this question may have played some part in the determination of the military judge that the requested continuance was not merited, we do not believe it was the overriding factor.

Article 40, Code, supra, 10 USC § 840, provides that "[t]he military judge . . . may, for *reasonable* cause, grant a continuance to any party for such time, and as often, as

**305**

may appear to be just." (Emphasis supplied.) The granting or denial of a motion made at trial for ▮▮ a continuance of court-martial proceedings lies within the sound discretion of the military judge. Paragraph 58, Manual for Courts-Martial, United States, 1969 (Revised edition). Only when he abuses that discretion will we reverse for refusal of a *reasonable* delay. United States v Plummer, 1 USCMA 373, 375, 3 CMR 107 (1952); United States v Vanderpool, 4 USCMA 561, 16 CMR 135 (1954); United States v Daniels, supra; United States v Potter, 14 USCMA 118, 33 CMR 330 (1963). The erroneous denial of appellant's motion must, of course, prejudice his substantial rights. United States v Potter, supra. As this Court stated in United States v Nichols, 2 USCMA 27, 36, 6 CMR 27 (1952):

". . . We believe that law officers[1] should weigh carefully the merits of a motion to continue and if it appears reasonable that it is not made on frivolous grounds or solely for delay, the request should ordinarily be granted."

We are satisfied that under the circumstances of this case the military judge did not abuse his ▮▮ discretion in denying the request for a continuance. This record represents a solicitous approach to the appellant's right to counsel of his choice by the military judge as well as by representatives of the Government. The appellant's precipitate and frequent discharge of appointed counsel, his refusal to accept assistance in obtaining civilian counsel, and his inability to relate some time limit for the continuance categorize the request as unreasonable. The record of trial reflects that the appellant was well represented by appointed military counsel. Where "no harmful consequence resulted from denial of a continuance, there is no ground for complaint, and where the withdrawing or discharged counsel

[1] The predecessor of the military judge.

**306**

was adequately replaced and the defense properly presented, it is generally held that refusal of a postponement was not prejudicial to the accused. [Citations omitted.]" 17 Am Jur 2d, Continuance, § 35, Withdrawal or discharge of counsel, page 158. Cf. United States v Johnson, 20 USCMA 359, 43 CMR 199 (1971).

We need not dwell at length on the second issue which questions the use of hearsay evidence during the hearing on the appellant's request for further opportunity to procure civilian counsel.

With regard to the admission of evidence during contested preliminary motions, paragraph 137, Manual, supra, provides that the military judge may as a matter of discretion relax the rules as to interlocutory matters relating to an application for a continuance. In a supplemental brief, filed with permission of this Court, appellate defense counsel contend, alternatively, that: (1) Since the appellant's contention at trial that he had not had the opportunity to exercise his right to be represented by civilian counsel "was *not* couched in language which indicated that he only wished a continuance" (emphasis supplied), the relaxation of the rules of evidence, provided for in paragraph 137 of the Manual, does not apply; and (2) assuming, *arguendo,* that position (1) is rejected, counsel aver that the Manual contemplates a *reasonable* relaxation of the rules of evidence and not the total abandonment thereof—"[T]he judge's power to relax the rules of evidence can never justify the use of extremely dubious hearsay as an evidentiary basis for denying any interlocutory motion, even a motion for a continuance."

We cannot agree with either position espoused by appellate defense counsel. After two *continuances* were granted the appellant in order to allow him additional time to secure the services of counsel agreeable to him, appointed defense counsel, during the third hearing, informed the military judge that the appellant "is asking for

a delay in order to obtain civilian counsel." The appellant agreed that he was requesting "additional time to secure a civilian attorney." As he stated, "I don't think I have had enough time." The military judge asked in vain for some indication from the appellant as to what he would do to retain counsel agreeable to him in the event "another continuance" was granted. It can only be concluded that all concerned with the trial of this case, including the appellant, understood the request for additional time to obtain counsel, to be in the nature of a motion for a continuance within the meaning of Article 40 of the Code and paragraphs 58 and 137 of the Manual.

Without detailing the testimony involved, it is readily apparent that the rules of evidence were somewhat relaxed in this case. The appellant himself disclosed at trial that in a letter from his brother he learned that civilian counsel "was having problems getting over here." This was a central issue in his request for a continuance. That letter, however, was not placed in evidence although it was apparently available. Significantly, there was no objection by defense counsel to the hearsay evidence introduced by the Government. Cf. United States v Ciarletta, 7 USCMA 606, 23 CMR 70 (1957); United States v Howell, 11 USCMA 712, 29 CMR 528 (1960).

This Court has continuously adhered to the doctrine that the admission of hearsay evidence is not reversible error where such evidence is cumulative or a mere reiteration of evidence otherwise established in the record of trial. See United States v Whisenhant, 17 USCMA 117, 120, 37 CMR 381 (1967). Moreover, as this Court stated in United States v Montgomery, 20 USCMA 35, 39, 42 CMR 227 (1970):

". . . A trial judge, as distinguished from a jury, must be presumed to have exercised the proper discretion in distinguishing between material and immaterial evidence introduced at the trial and to have based his decision only on the former, in the absence of a clear showing to the contrary by the appellant. United States v Menk, 406 F2d 124 (CA 7th Cir) (1968)."

We are satisfied that the military judge in this case was not materially influenced in his decision denying the motion for a continuance by the hearsay evidence presented by the Government.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN and Judge QUINN concur.