## UNITED STATES

v.

**Henry G. CHENNAULT Yeoman Third Class, U.S. Coast Guard.**

**CGCMS 23297.**
**Docket No. 801.**

U. S. Coast Guard Court of Military Review.

Sentence Adjudged 17 June 1976.

Decided 3 Jan. 1977.

Trial Counsel: LCDR Kevin J. Barry, USCG.

Defense Counsel: LT Richard B. Cole, USCGR.

### OPINION OF THE COURT

ROSENWASSER, Chief Judge:

The accused was tried on charges of graft with nine specifications, presenting a false and fraudulent claim, and dereliction in the performance of duties, with 21 specifications. The military judge, sitting alone as the special court-martial, acquitted him of the fraud, but found him guilty upon four of the graft specifications and ten of the derelictions of duty. He was sentenced to a bad conduct discharge alone. The convening authority, an officer exercising general court-martial jurisdiction, duly approved the sentence.

The accused declined appellate representation, but the record nevertheless presents for appellate review a question as to whether the accused was denied his statutory right to military counsel of his own selection, intertwined with the question of whether the judge erred in not granting the accused's motion for a continuance to enable the requested counsel to represent the accused at the trial.

All of the offenses occurred aboard the 180-foot Coast Guard cutter GENTIAN, based in Galveston at the time of trial and for some years before, but due for a change in July 1976. The GENTIAN has a complement of about 50 enlisted men. Seventeen enlisted men and one officer were called as witnesses at the trial, which commenced on Wednesday, 16 June 1976 in Galveston.

The accused had been informed of the charges against him on 29 April and an Article 32, 10 U.S.C. § 832 investigation was scheduled for 10 May. On 30 April the accused asked in writing that LT Droese, a legal officer stationed in the Seventh Coast Guard District, Miami, be assigned to represent him at the investigation. The Commander of the Eighth District, who was the convening authority, promptly sent a message to the Seventh District inquiring as to LT Droese's availability. The Seventh District replied that he was not available. Thereafter on 5 May 1976 LT Cole, a lawyer on the staff of the convening authority, was designated to represent Chennault at the investigation. On the same date LT Cole communicated with the legal office in Miami and was informed that LT Droese would be unavailable for the month of May. He also wrote three letters on that date: one, appealing the determination of unavailability, another asking two days postponement of the investigation, and a third requesting that he be provided with a written explanation of the unavailability determination. Apparently by mutual agreement, the investigation began on the afternoon of 11 May; the appeal obviously was rejected; no explanation appears in the record as to why LT Droese was unavailable.

On 21 May LT Cole, signing as "detailed defense counsel", requested that LT Droese "be detailed as individual military counsel for the accused," for the anticipated special court-martial, although the charges had not yet been referred for trial, nor the convening order signed. Trial was set for the week of 14 June 1976. By letter dated 27 May, the convening authority informed LT Cole that by the terms of a message from the Commander, Seventh District, LT Droese was not reasonably available for trial in the week of 14 June; it had been indicated that he would be available the following week of 21 June but would require two weeks beyond that to prepare for trial. The letter concluded:

> In making this decision (denying the request to detail LT Droese), I have given consideration to the possibility of ordering the trial continued to the week of 6 July in order that LT Droese might be made available. CGC GENTIAN is scheduled to be in operational status during the month of July, and also to be relieved and to change home port during that month. A continuance of the trial into that month would substantially interfere with the considerable effort required for GENTIAN to meet these operational commitments.

It may be noted that while his command was willing to make LT Droese available on and after 21 June 1976, it was LT Droese himself who stipulated that he be given two weeks to prepare for trial, thus making 6 July the earliest date he would be ready to participate in a trial.

The record discloses further that LT Droese was committed to a case entitled *Barbara Cowell, Administratrix v. United States, et al.* for the week of 14 June 1976; that the CGC GENTIAN was in BRAVO status from 20 June through 26 July, meaning that it had to maintain operational readiness. In addition to usual duties, it could also be called out for an extended search or to respond to an emergency. The CGC BLACKTHORN was due in Galveston about 23 July to replace the GENTIAN, and an exchange of crews between the two

vessels had to be accomplished by the end of the month.

On 2 June 1976, LT Cole appealed from the decision denying the requested counsel. The appeal went to the Commander, Atlantic Area, the next higher level of supervision. On 9 June 1976, that official, by message to LT Cole, denied the appeal. The message referred to the fact that the convening authority had given consideration to delaying the trial until the week of 6 July in order to accommodate LT Droese but had determined that to do so would substantially interfere with operational requirements for the CGC GENTIAN. The appellate authority stated that nothing in the letter of appeal led him to conclude that the convening authority had abused his discretion. The ruling on appeal decided two things: (1) it upheld the determination by The Commander, Seventh District, that LT Droese was not available as individual military counsel for trial in the week of 14 June; and (2) it upheld the determination by the convening authority not to delay the trial until 6 July.

When the case came to trial on 16 June the defense counsel renewed the request for LT Droese and thereby preserved the issue for appellate scrutiny. He moved for "appropriate relief through continuance in order that LT Droese may be made available as individual military counsel." There was also a motion to dismiss the charges on the ground that the accused had been deprived of due process of law as to his counsel rights. The court denied both motions—correctly so, in our judgment.

■ Article 38(b) of the Code speaks of counsel rights before a general or special court-martial. It has reference only to the trial and not to the Article 32 investigation. It gives the accused the right to have individual military counsel of his own selection at the trial, "if reasonably available." Thus, under Article 38(b) the accused may obtain two free military lawyers—counsel of his choice if available, and the detailed counsel. But this privilege does not extend to the Article 32 investigation. An accused at an Article 32 investigation has an enforceable legal right to but one free lawyer.

Where, as here, he asks for a military lawyer who is not under the command of the officer who referred the charges for investigation, that officer must "take prompt action to ascertain the availability of the requested counsel and, if available, to obtain his services without unduly delaying the investigation . . ." Para. 34c(2) MCM 1969.

The Commander, Eighth Coast Guard District, took prompt action in the instant case; but since LT Droese was declared to be unavailable, paragraph 34c(3) directed the district commander to "detail counsel certified under Article 27(b) to represent the accused as counsel at the investigation." The district commander complied by detailing LT Cole. This action accorded the accused due process of law with respect to his counsel rights at the investigation. The Manual demanded that he be supplied with counsel, but "without unduly delaying the investigation"; and it does not grant an opportunity to appeal. Cf. para. 48b MCM.

■ When the accused, through his detailed defense counsel, asked for LT Droese as individual military counsel for the trial set for the week of 14 June, he had a right to have him "if reasonably available", along with LT Cole. However, LT Droese was committed to another case for that week. That fact is not contradicted or diminished by any evidence presented by the defense. Since the determination of unavailability was not arbitrary and was not without a sound factual basis, the accused's request to be represented by the selected counsel on the date set for trial was properly denied. Cf. *United States v. Quinones*, 23 U.S.C. M.A. 457, 50 C.M.R. 476, 1 M.J. 64 (1975). Cf. also *United States v. Eason*, 21 U.S.C. M.A. 335, 45 C.M.R. 109 (1972).

■ Decisions not to continue the trial to a date in the month of July—when LT Droese would be available and when he could be ready to represent Chennault—were arrived at by the convening authority, by the Commander, Atlantic Area, and by the judge at the trial. If the judge abused his discretion in denying the accused the continuance he sought, this Court would be bound to reverse the conviction and grant a

rehearing. The granting or denial of a motion made at trial for a continuance lies within the sound discretion of the judge. *United States v. Kinard*, 21 U.S.C.M.A. 300, 45 C.M.R. 74 (1972). The record of trial reflects that the accused was well represented by the detailed counsel, who had also represented him at the investigation. At the outset of the trial the accused told the judge that he was satisfied to proceed with LT Cole. The facts regarding the situation in July of the CGC GENTIAN, a substantial percentage of whose personnel had to attend the trial, are also shown by the record. We think it plain that there was no abuse of discretion in denying the continuance. *United States v. Kinard*, supra; *United States v. Massey*, 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964).

The findings of guilty and the sentence are affirmed.

Judges YOUNG and BRIDGMAN concur.

Judge BURGESS did not participate in the decision in this case.

MAGUIRE, Judge concurring:

The form in which appellant's request for individual military counsel was dealt with I find disturbing. There is a no doubt that a decision to deny the service of a requested counsel at trial is for the commander under whom the counsel serves and that appeal from a denial lies to that commander's "next higher commanding officer or level of supervision." MCM 48*b*. The convening authority here properly referred the request to Commander, Seventh Coast Guard District. That officer gave a qualified response that the requested counsel was not available for trial on the date specified but could be available by a later date provided he had then two weeks' preparation time.

The convening authority advised appellant of this, in language quoted in the opinion. The appellate authority, noting that "CCGD EIGHT [the convening authority] . . . determined that LT . . . was not reasonably available," affirmed the action. The opinion charitably construes all this as a determination by Commander, Seventh District, a relaying of that determination by the convening authority, to-gether with notice of a decision not to postpone trial, and an approval by the appellate authority both of the determination by Commander, Seventh District, and the decision of Commander, Eighth District.

It may be that, in total effect, these are what the actions announced amounted to, but that is not what the persons involved said at all. The convening authority spoke in clear terms of his own determination of unavailability and the appellate authority spoke just as clearly of affirming the convening authority's determination of unavailability. Possibly this is just a case of twice unfortunately chosen language; it may also be a case of a complete misconceiving of functions by the authorities involved. What saves the actions from reversible error is, in my opinion, the combination of acquiescence by appellant and skilled representation by appointed counsel.

I have some qualms also about the functioning of Commander, Atlantic Area, as the appellate authority to review the decision of Commander, Seventh District, in any case. Amendment 32 (23 Dec. 1975) to the *Coast Guard Supplement to the Manual for Courts-Martial* (CG–241) provides in subsection 0140*c*, that appeals from determinations of unavailability made by commanders of Coast Guard Districts (other than of the Third and the Twelfth) should be directed "to the appropriate area commander." Under the unspoken language of the section, considered in the light of MCM 48*b*, an appeal from a denial by the Commander, Third or Twelfth District, would go to the Commandant. It is clear that the reason for the distinction is that under present organization the incumbent district commander in those two cases is, except when officially off-duty, also the area commander.

I will not voice again here my recurring doubts about the validity of much in the *Coast Guard Supplement* or of the delegations that are assumed to have occurred; I question here the compliance with MCM 48*b* when the functions of the area commander are considered.

In CG–229 (*Coast Guard Organization Manual*) the functions of the area com-

mander are set out. Overall, the area commander functions when inter-district operational requirements call for a coordination of effort best directed from a single point. Pertinently, the Manual deals with control of personnel and movement of personnel in these words: "redeploying temporarily—and coordinating or controlling—personnel and facilities . . . to meet emergent or contingent operational situations (involving any operational mission, but primarily search and rescue, law enforcement on the high seas, environmental protection)" Page III–3. In the same place is repeated the affirmation that "[t]he district commander is the direct representative of the Commandant and has full authority and responsibility for assigned functions within his district."

In CG–300 (*Coast Guard Regulations*), the district commander is described as "The principal agent and representative of the Commandant . . . responsible for the administration and general direction of district units under his command." Section 3–1–3. The area commander is limited, however, to "planning and coordinating the forces of the districts in his area in the operational fields of search and rescue, major oceanographic and icebreaking programs, military readiness, mobilization . . ." Section 3–1–2.

At 33 CFR 3.01–1, Area Offices are described as "intermediate echelons of operational command."

Not entirely relevant, but of interest, are the facts that an area commander has, as such, no court-martial convening authority, no legal staff, and no authority to direct a district commander to effectuate transfer of personnel orders except as specified at page III–3 of CG–229.

The description of the functions of a district commander at page IV–7 of that Manual is clear. It being: "The District Commander is the direct representative of the Commandant in all matters pertaining to the Coast Guard within his district." Just as, although unspoken in the *Coast Guard Supplement*, it is apparent that the Commandant is the appellate authority for de-

terminations of non-availability by the Commanders, Third and Twelfth Districts, so too, in the absence of 0140c, the Commandant would be the appellate authority for such determinations by all district commanders. The apparent reason for 0140c is to spread a workload.

I think that the arbitrary designation of area commanders to act in particular cases alien to the nature of their commands in general is violative of both the letter and spirit of the language of MCM 48b. I do not think that an area commander is, in the sense of the MCM, "the next higher commanding officer or level of supervision."

As a final comment I add that the opinion tacitly approves as an action of the designated appellate authority an upholding of "the determination by the convening authority not to delay the trial until 6 July." No matter what the validity of subsection 0140c, this is not a matter within the cognizance of an area commander at all.

Here again my opinion has nothing to do with the merits of the review, for error has been waived and there was, in resultant fact, no prejudice to appellant. The purpose of this expression is only that prescribed simple procedures be followed without recourse to imaginative improvements or circumventions, so that pitfalls needlessly dug may be eliminated.