CRAWFORD, Chief Judge,
delivered the opinion of the Court.
Contrary to his pleas, Appellant, a cadet at the Air Force Academy, was convicted by officer members of one specification of Article 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (2000), by damaging a computer, in violation of 18 U.S.C. § 1030(A)(5)(B) (2000).[1] He was sentenced to a dismissal and total forfeitures. The convening authority approved the dismissal and partial forfeitures, and the Air Force Court of Criminal Appeals affirmed the findings and sentence.
Because we hold the military judge abused his discretion in refusing to grant a defense-requested continuance to obtain a civilian lawyer (Issue I), we will not address the other granted issues.[2]
*277 FACTS
The Government contends that, contrary to the United States Air Force Academy (USAFA) rules, Appellant attempted to use his computer to access internet chat rooms. To prevent such communications, USAFA had previously developed a firewall as part of the USAFA network.
On February 2, 1999, defense counsel requested a new investigation pursuant to Article 32, UCMJ, 10 U.S.C. § 832 (2000), arguing that the Government mistakenly told defense counsel that logs describing individuals at USAFA who had entered and exited the firewall did not exist. In discussing the motion, the judge made several comments concerning the competency of the defense counsel for relying on the Government’s assertion that these logs did not exist, and for not independently investigating the existence of the logs. When discussing the reason for a new Article 32 investigation, the judge criticized the attorneys as follows:
Certainly as an attorney, one would expect to question why [the firewall logs] didn’t exist. Whether it was a routine matter or there was something about the particular logs from this occasion that somehow were lost or destroyed inadvertently____ We are just talking about testing the available evidence, which is the function of an advocate.
In response to defense counsel’s explanation as to why the motion was made months after the original Article 32 investigation, the judge stated, “but the thought never occurred to you at that time to ask why [the logs] didn’t exist?” “[I]f you have an indication that the type of evidence that you are looking for should be in existence, then I think as an attorney you should be questioning why it is no longer in existence.” The judge said defense counsel should not have accepted the government representative’s statement that the logs did not exist, and should have asked their own consultant rather than relying on the Government representative. The judge said defense counsel should have assumed the records were always present and “had been misinformed.” Counsel responded that they assumed the government was telling the truth. The judge then said, “a competent advocate assume[s] nothing.” In response to the judge’s continued questioning, the defense counsel stated: “Again, if we were remiss and if I’m not a competent advocate for not confirming that, I’ll take that hit. But, it doesn’t take anything away from the fact that [the Government] actually knew the records existed____” Later, the defense admitted they were “novices with computers” and dependent upon experts who thought the logs did not exist. In denying the motion for a new Article 32 investigation, the judge noted that the “availability of the firewall logs, regardless of their completeness, was unappreciated by both the prosecution and the defense.” He continued:
The attorneys in this case were not by training or experience well-equipped to deal with the complex computer[-]related materials inherent in the alleged offenses .... [I]t is utterly confounding to the court the defense expert limited himself to stating requests to attorneys who were not equally qualified in the subject matter.
After the judge denied the motion for a new Article 32 investigation, Appellant told the judge he believed his counsel were ineffective at the original Article 32 investigation, and therefore requested new defense coun *278 sel. Appellant was then told he had misunderstood the judge’s words; in not ordering a new Article 32 investigation, the judge did not say that counsel was ineffective. Appellant disagreed, and personally addressed the court as follows: ‘Tour Honor, in light of your statements that my counsel were ineffective at my Article 32 hearing, as well as throughout the proceedings leading up to this court-martial, ... I would like to fire both.” The judge replied again that Appellant had misunderstood his prior remarks, but that because Appellant insisted on new counsel, replacement counsel “must be available and prepared for trial on 8 March 1999.” The judge did not at this time release original defense counsel.
Appellant then requested representation by Major Theurer, a defense counsel with a reputation as an expert in computer matters, as an individual military defense counsel under Rule for Courts-Martial 506(b)[hereinafter R.C.M.]. Although Major Theurer’s superior approved the request, he was not available for trial on March 8, prompting the judge to state that “if Major Theurer is not available on the 8th of March, then he is not available period. The trial will proceed without him.” On February 10, Mr. Spinner, a civilian defense counsel, entered his appearance on behalf of Appellant, but requested a delay until April 19, because of his schedule. On the same day, the military judge faxed a response to Mr. Spinner, advising him that the trial date was March 8 and, “If you wish to represent the accused you need to be present and prepared on that date.” He further advised Mr. Spinner, “If you cannot be available and prepared on that [sic] 8 Mar 99, you are not reasonably available and should not undertake this representation.” Finally, he advised Mr. Spinner, ‘Tou should not count on any further continuance being granted, and make your plans accordingly for preparation or termination of your representation.”
On February 12, the Government asked that the continuance be denied because Appellant “is free to retain counsel____ Given the amount of time that Cadet Wiest has had, and still has, to obtain counsel that are available on 8 Mar 99, we believe no continuances are necessary at this time.” On the same date, the judge denied the defense request for a continuance.[3]
Appellant asked for new military defense counsel on March 8. Two new military defense counsel entered appearances for Appellant and indicated they were ready to proceed. Mr. Spinner, who had also been retained as civilian counsel, was not ready to begin because of other commitments. At this session, Appellant’s request to release prior military counsel was granted, as was his request to be represented by new counsel, without Mr. Spinner as civilian counsel. The trial proceeded as scheduled.
DISCUSSION
The right to counsel is fundamental to our system of justice. United States v. Palenius, 2 M.J. 86 (C.M.A.1977). It should therefore be an unusual case, balancing all the factors involved, when the judge denies an initial and timely request for a continuance in order to obtain civilian counsel, particularly after the judge has criticized appointed military counsel. Indeed, we have noted that the right to civilian counsel is a “most valuable right,” and that therefore a continuance should be granted at least after initial requests for such counsel have been made, and certainly in a case where Appellant is unsure of his appointed military representation. United States v. Kinard, 21 C.M.A. 300, 303, 45 C.M.R. 74, 77 (C.M.A.1972)(citing United States v. Donohew, 18 C.M.A. 149, 39 C.M.R. 149 (C.M.A.1969)); cf. Morris v. Slappy, 461 U.S. 1, 3-4, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)(citing Slappy v. Morris, 649 F.2d 718 (9th Cir.1981)). Accordingly, we hold that the military judge erred by exercising an inelastic attitude in rescheduling Appellant’s trial, where such request was predicated on the *279 judge’s negative comments about Appellant’s original military counsel and Appellant’s subsequent selection of a new civilian counsel.
Our standard of review in the case at bar is abuse of discretion. United States v. Weisbeck, 50 M.J. 461, 464-66 (C.A.A.F.1999). In determining whether the judge abused his discretion, we consider the factors articulated in United States v. Miller: “surprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice.” 47 M.J. 352, 358 (C.A.A.F.1997) (citation omitted). See also United States v. Cokeley, 22 M.J. 225, 229-30 (C.M.A.1986)(availability of witnesses); Kinard, 21 C.M.A. at 305, 45 C.M.R. at 79.
As to surprise on February 10, Mr. Spinner requested a continuance well before the March 8 trial date. The request for a continuance was based on unexpected events. Here, Appellant was clearly surprised by the harsh criticism of his counsel by the military judge, and this factor weighed in favor of a continuance. As to timeliness, Mr. Spinner requested the continuance as soon as he was retained, six days after the court was recessed and well before the trial date. He had made no prior requests for continuance, nor was there any delay or bad faith by Appellant as he contacted Mr. Spinner almost immediately and Mr. Spinner promptly submitted his request for a continuance.
Because of the comments made by the judge concerning Appellant’s representation at the Article 32 hearing, Appellant requested the appointment of new military counsel and sought, in addition, to retain civilian counsel. Based on the record, this request was not a surprise. Appellant’s request for new counsel was submitted shortly after the February 2 session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 851(a) (2000). The timing of this request therefore allowed sufficient time to establish a date when civilian counsel would be available to work within the schedule of the witnesses, none of whom were outside the United States. Moreover, the Government did not establish a reason for opposing Appellant’s request for a continuance, other than noting that the witnesses were available on March 8, 1999. Nor did they establish an attempt by Appellant to “vex” the Government, or show that witnesses would not be available at a later date. “Where a military judge denies a continuance request made for the purpose of obtaining civilian counsel, prejudice to the accused is likely.” Miller, 47 M.J. at 359. Given these circumstances, the military judge should have granted the continuance, and therefore abused his discretion in failing to do so.
DECISION
The decision of the United States Air Force Court of Criminal Appeals is reversed, the findings and the sentence are set aside, and the record of trial is returned to the Judge Advocate General for a further disposition not inconsistent with this opinion.

. We heard oral argument in this case at Offutt Air Force Base, Bellevue, Nebraska, on October 1, 2003, as part of "Project Outreach." See United States v. Allen, 34 M.J. 228, 229 n. 1 (C.M.A.1992).

. II. WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT
TO SUSTAIN APPELLANT’S CONVICTION TO THE LESSER-INCLUDED OFFENSE OF 18 U.S.C. § 1030(A)(5)(B) FOR INTENTION *277 ALLY ACCESSING A PROTECTED COMPUTER WITHOUT AUTHORIZATION AND RECKLESSLY CAUSING DAMAGE WHERE THERE IS NO EVIDENCE THAT APPELLANT'S ACCESS TO THE COMPUTER IN QUESTION ACTUALLY CAUSED THE DAMAGE ALLEGED BY THE PROSECUTION AND WHERE APPELLANT HONESTLY BELIEVED HIS ACCESS TO THE SYSTEM WAS AUTHORIZED.
III. WHETHER THE MILITARY JUDGE ERRED IN INSTRUCTING THE MEMBERS ON THE LESSER-INCLUDED OFFENSE OF SPECIFICATION 1 OF THE CHARGE WHERE HE FAILED TO INSTRUCT THE MEMBERS THAT THE UNAUTHORIZED ACCESS TO THE COMPUTER SYSTEM MUST HAVE BEEN INTENTIONAL.
IV. WHETHER THE MILITARY JUDGE ERRED IN PROVIDING THE COURT MEMBERS A MISTAKE OF FACT INSTRUCTION WHICH REQUIRED THEM TO FIND THAT APPELLANT'S MISTAKE OF FACT WAS REASONABLE INSTEAD OF MERELY HONEST.

. We need not decide whether the trial judge was disqualified under R.C.M. 902(b)(1), because he had "knowledge of disputed evidentiary facts concerning” the availability of Mr. Spinner by obtaining facts ex parte and not subject to judicial notice.