*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

## UNITED STATES
Appellee

**v.**

## Salvador JACINTO,
### Aviation Structural Mechanic First Class
United States Navy, Appellant

**No. 24-0144**
Crim. App. No. 201800325

Argued January 29, 2025—Decided February 2, 2026

Military Judges: Roger E. Mattioli (trial), Ryan J.
Sears (*DuBay* hearing), and Michael F.
Whitican (*DuBay* hearing)

For Appellant: *Lieutenant Jesse B. Neumann*, JAGC,
USN (argued); *Major Colin W. Hotard*, USMC.

For Appellee: *Lieutenant Lan T. Nguyen*, JAGC,
USN (argued); *Major Candace G. White*, USMC,
*Captain Jacob R. Carmin*, USMC, Lieutenant *K.
Matthew Parker*, JAGC, USN, and *Brian K. Keller*,
Esq. (on brief); *Colonel Joseph M. Jennings*, USMC,
and *Commander John T. Cole*, JAGC, USN.

Amicus Curiae on Behalf of E.B. and in Support of
Appellee: *Peter Coote*, Esq. (on brief).

———————

PER CURIAM.

## Procedural History

Appellant was charged with, among other offenses, sexually abusing E.B., his minor stepdaughter. On the eve of Appellant's 2018 trial, the defense received E.B.'s medical records which the defense had been seeking throughout the pretrial proceedings. These records indicated that when E.B. was hospitalized for in-patient mental health treatment shortly after accusing Appellant of sexual abuse, she may have been experiencing psychotic agitation, and she may have been prescribed Thorazine, an antipsychotic drug. Despite this late disclosure of what Appellant's counsel referred to as a "bombshell,"[1] the military judge denied a defense motion for a continuance.

At trial, a court-martial panel convicted Appellant, contrary to his pleas, of one specification of rape of a child (E.B.) and three specifications of sexual abuse of a child (also E.B.), in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b (2012).[2] The panel sentenced Appellant to a bad-conduct discharge and confinement for eight years. The convening authority approved the sentence and granted Appellant three days of confinement credit. The United States Navy-Marine Corps Court of Criminal Appeals (CCA) then affirmed the findings and sentence. *United States v. Jacinto* (*Jacinto I*), 79 M.J. 870, 875 (N-M. Ct. Crim. App. 2020), *set aside in part by United States v. Jacinto* (*Jacinto II*), 81 M.J. 350, 355 (C.A.A.F. 2021).

---

[1] Trial defense counsel explained that the question of whether E.B. was experiencing psychotic agitation at the time of her accusation against Appellant "goes to the heart of [E.B.'s] credibility, memory, and ability to accurately perceive events." (Internal quotation marks omitted.)

[2] Appellant also was convicted of an additional specification of rape of a child (involving E.B.'s sister), in violation of Article 120b, and two specifications of child endangerment by culpable negligence involving E.B. and her friend, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012).

Appellant appealed his conviction to this Court, arguing that the military judge abused his discretion when he denied the defense motion for a continuance and when he denied a defense motion for in camera review of E.B.'s mental health records. Upon analyzing these issues, we concluded that "[b]ecause the record before us is unclear and incomplete, we cannot make an informed decision about whether the military judge's crucial factual findings are clearly erroneous." *Jacinto II*, 81 M.J. at 354. We specifically noted the following:

> there is a crucial dispute between the parties about whether the medical records indicate that E.B.'s physician diagnosed E.B. with psychotic agitation and authorized attending medical personnel to administer Thorazine *when* needed, *or* that E.B.'s physician was merely indicating in the charts that medical personnel were authorized to administer Thorazine *if* needed in the event E.B. subsequently displayed symptoms of psychotic agitation.

*Id.* We then set aside the lower court's decision in part and remanded for additional proceedings to obtain "any other evidence (such as affidavits from medical providers) relevant to whether E.B. was diagnosed with psychotic agitation in May 2017" and to make "any other findings of fact necessary to resolve" the continuance issue. *Id.* at 354-55.

On remand, the CCA ordered a *DuBay* hearing,[3] which resulted in the *DuBay* judge ordering the production of E.B.'s entire hospital record. However, the *DuBay* judge did not resolve whether E.B. was diagnosed with psychotic agitation in May 2017. Nevertheless, the CCA concluded that the military judge abused his discretion in denying the continuance motion, but the lower court then held that Appellant was not prejudiced by the military judge's error. *United States v. Jacinto* (*Jacinto III*), No. 201800325, 2024 CCA LEXIS 14, at \*11-13, 2024 WL 234699, at \*5 (N-M.

---

[3] *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

Ct. Crim. App. Jan. 18, 2024) (unpublished). As a result, the CCA again affirmed the findings and sentence. *Id.* at *17, 2024 WL 234699, at *7.

We then granted review of two issues:

> I. Did the lower court fail to comply with this Court's remand order?
>
> II. Did Appellant suffer prejudice from the military judge's erroneous continuance denial?

*United States v. Jacinto* (*Jacinto IV*), 85 M.J. 96 (C.A.A.F. 2024) (order granting review). Following oral argument, we ordered the Government to submit an affidavit from Dr. Harwant Gill, E.B.'s treating psychiatrist, to address "why E.B. was prescribed Thorazine and whether E.B. exhibited psychotic agitation in May 2017." *United States v. Jacinto* (*Jacinto V*), 85 M.J. 339 (C.A.A.F. 2025) (order). The Government procured Dr. Gill's affidavit, but this affidavit was "unresponsive on these points." *United States v. Jacinto* (*Jacinto VI*), 85 M.J. 428, 430 (C.A.A.F. 2025) (per curiam). Consequently, we remanded the record yet again for further factfinding regarding two key questions:

> 1. Why was E.B. prescribed Thorazine in May 2017?
>
> 2. Did E.B. exhibit signs of psychotic agitation in May 2017?

*Id.*

The CCA ordered another *DuBay* hearing. Dr. Gill appeared at a closed session of the hearing and only the *DuBay* judge questioned him. Dr. Gill stated that he had recently reviewed the relevant portions of E.B.'s medical records from when she was hospitalized in May of 2017. Dr. Gill testified that he was one of E.B.'s treating physicians at the hospital and he prescribed Thorazine "as a standard precautionary medication available to nurses." He explained that he took this step just in case any instances of "acute agitation, self-injury, [or] attempts to harm others" arose but the nurses could not immediately contact a physician. He stated that prescribing Thorazine on an "as needed" basis was standard "admission protocol" for

patients E.B.'s age, and thus this prescription was "not specific to E.B.'s presenting symptoms or illness." Dr. Gill also testified that E.B. did *not* exhibit signs of psychotic agitation and that E.B. denied experiencing hallucinations and delusions. Further, Dr. Gill stated that E.B. was *not* "actually administered Thorazine."

After this testimony, the defense sought to qualify Dr. Gill as an expert and to pose questions to him. The defense's stated concern was that Dr. Gill's limited testimony about E.B.'s May 2017 hospital stay did not reveal anything about whether E.B. was experiencing psychotic agitation at the time she made the abuse allegation against Appellant, which was prior to her hospitalization. The defense wanted to question Dr. Gill about the extent of his memory of E.B. and the signs and symptoms of psychotic agitation. The military judge denied the defense's request, stating that the purpose of the hearing was limited to two questions and these two questions had been answered. As for the defense request to qualify Dr. Gill as an expert, the *DuBay* judge found that it would be unhelpful and irrelevant.

Upon completing the hearing, the *DuBay* judge issued written findings of facts which were consistent with Dr. Gill's testimony. The CCA adopted these findings of facts and answered this Court's questions as follows:

> *1. Why was E.B. prescribed Thorazine in May 2017?*
>
> **Answer:** E.B. was prescribed Thorazine as a standard precautionary measure for use on an "as needed" basis as part of an admissions protocol for all patients in E.B.'s age group. The Thorazine prescription was not specific to E.B.'s case or circumstances. In May 2017, E.B. was never administered Thorazine as it was not needed.
>
> *2. Did E.B. exhibit signs of psychotic agitation in May 2017?*
>
> **Answer:** No.

*United States v. Jacinto*, No. 201800325 (N-M. Ct. Crim. App. Sep. 22, 2025) (response to order). The CCA then

returned the record to this Court for further review of the two July 2024 granted issues.

Upon the record's return, this Court granted Appellant's motion to make additional arguments relative to the *DuBay* hearing. Appellant has now raised two additional issues for this Court to consider:

I.

Did the lower court fail to comply with this Court's remand order?

II.

Was [A]ppellant denied his constitutional right to confront the witnesses against him when the *DuBay* judge refused to let the Defense examine or impeach Dr. Gill?

**Discussion**

As explained below, we answer the first additional issue in the negative because the CCA and the *DuBay* judge complied with this Court's May 2025 remand order. As to the second additional issue, we hold that even if the military judge violated Appellant's constitutional rights by denying him the opportunity to examine or impeach Dr. Gill, the violation was harmless beyond a reasonable doubt.

As also explained below, we resolve the July 2024 granted issues in the Government's favor. Specifically, we hold that original Issue I is moot and that original Issue II must be answered in the negative because the military judge's erroneous continuance ruling was harmless. We therefore affirm the decision of the lower court.

**Additional Issue I**

Appellant argues that the *DuBay* judge did not comply with this Court's remand order because "the most recent *DuBay* hearing centered exclusively on the content of E.B.'s treatment records, which occurred only *after* she made her allegations," and therefore, the hearing never addressed the issue of whether E.B. exhibited signs of psychotic agitation in May 2017 before her hospitalization.

Appellant asserts that the *DuBay* judge should have allowed Appellant to ask Dr. Gill about "other instances of E.B.'s behavior" because these instances would give insight into whether E.B. experienced psychotic agitation at the time she made the allegations against Appellant. Because the military judge denied the defense request, Appellant argues that "the record has not been 'fully developed on the psychotic agitation issue.'" (Citation omitted.)

Contrary to Appellant's position, we conclude that the CCA and the *DuBay* judge fully complied with this Court's May 2025 remand order. In its remand, this Court sought answers to two questions: (1) why was E.B. prescribed Thorazine in May 2017; and (2) did E.B. exhibit signs of psychotic agitation in May 2017? *Jacinto VI*, 85 M.J. at 430. With the assistance of the *DuBay* judge, the CCA answered both questions. Therefore, we answer Additional Issue I in the negative and hold that the CCA complied with this Court's remand order.

### Additional Issue II

Appellant next argues that the *DuBay* judge violated his constitutional right to confront Dr. Gill by not allowing the defense to question the doctor during the *DuBay* hearing. Specifically, Appellant argues that when the *DuBay* judge refused to allow the defense to question Dr. Gill "about E.B.'s behavior during the relevant time period," the military judge "violated Appellant's 'right to call witnesses whose testimony [would have been] material and favorable to his defense.'" (Citation omitted.) Further, Appellant argues that his confrontation rights were violated when the *DuBay* judge refused to let the defense examine Dr. Gill about (a) the limits of his memory of E.B., and (b) an email from Dr. Gill to the *DuBay* judge stating that E.B.'s counsel had attempted to discourage Dr. Gill from testifying at the *DuBay* hearing.

We begin our analysis by noting that this Court has repeatedly stated that a *DuBay* hearing must afford an accused due process, and we have explicitly held that due process in a *DuBay* hearing includes the right to

cross-examine witnesses. For example, in *United States v. Miller*, 47 M.J. 352, 359 (C.A.A.F. 1997), we wrote:

> Post-trial *DuBay* hearings must satisfy basic due process concepts. *United States v. Stone*, 26 M.J. 401 (CMA 1988); *United States v. Levite*, 25 M.J. 334 (CMA 1987). At the very least, accused persons should have notice of the post-trial hearing, the right to be heard at the proceeding, the right to present witnesses and "be represented by counsel, *have an opportunity to cross-examine witnesses*, . . . and have a verbatim record of the proceedings." *Levite*, 25 M.J. at 339.

(Emphasis added.) (Alteration in original.)

That said, even if the *DuBay* judge in this case violated Appellant's constitutional rights by not allowing him to question Dr. Gill, any error was harmless beyond a reasonable doubt. We reach this conclusion primarily for three reasons.

First, the record indicates that the proposed line of questioning by the defense would not have elicited evidence about whether E.B. was suffering from psychotic agitation before her hospitalization. Dr. Gill's testimony was based on his review of the hospital records, not his independent recollection of what E.B. might have told him about her behavior prior to her hospitalization.

Second, because Dr. Gill openly acknowledged that his testimony was based on his review of E.B.'s hospital records and not based on his independent memory of E.B., the limits of his memory of E.B. were already clear.

And third, the *DuBay* judge was already aware of the ex parte communication issue because Dr. Gill had emailed the *DuBay* judge about the actions of E.B.'s counsel.

For these reasons, we conclude that any error committed by the *DuBay* judge when he declined to allow defense counsel to question Dr. Gill was harmless beyond a reasonable doubt.

We now turn our attention to the issues that we originally granted in July of 2024.

**Original Issue I**

Appellant argues that the CCA failed to comply with this Court's July 2021 remand order. Appellant cites two specific instances of noncompliance: (1) the CCA failed to "resolve[] the crucial dispute of whether E.B. was suffering from psychotic agitation" at the time of the allegations; and (2) the CCA did not identify the medical records that "*should have been produced*." (Citation omitted.) (Internal quotation marks omitted.) However, both alleged instances of noncompliance have now been remedied.

Starting with Appellant's second point, we now have E.B.'s *entire* hospital record. At the time of our 2021 remand, our concern was that information missing from the record prevented us from assessing the trial military judge's factual findings and "the questions surrounding E.B.'s diagnosis and her Thorazine prescription for psychotic agitation." *Jacinto II*, 81 M.J. at 354. But with the hospital records before us and with the information produced during the most recent *DuBay* hearing, that concern is now resolved.

In terms of Appellant's first point, the information resulting from our May 2025 remand for further factfinding demonstrates that *at the time of her May 2017 hospitalization*, E.B. was *not* suffering from psychotic agitation and Thorazine was *not* administered to her. We recognize that Appellant would like additional information regarding E.B.'s mental health at the time she made her allegations against Appellant—which was prior to her hospitalization—but that was not within the scope of the remanded issue. *See Jacinto VI*, 85 M.J. at 430 n.3 (recommending that E.B.'s treating hospital physician be provided "with relevant portions of E.B.'s medical records so that he can attempt to answer the key [remand] questions"); *Jacinto II*, 81 M.J. at 355 (remanding to obtain relevant evidence "to whether E.B. was diagnosed with psychotic agitation in May 2017"). Accordingly, because the CCA has now provided us with information responsive to our remand order, we conclude that Issue I is moot.

**Original Issue II**

Original Issue II asks whether Appellant suffered prejudice from the military judge's erroneous denial of a defense request for a continuance. Appellant agrees with the CCA that the trial military judge abused his discretion when denying the defense's motion for a continuance, and the Government does not challenge the CCA's conclusion in this Court.[4] Therefore, we will assume that the military judge did indeed abuse his discretion and we will only consider whether Appellant was prejudiced by this error.

This Court reviews questions of prejudice de novo. *United States v. King*, 83 M.J. 115, 120 (C.A.A.F. 2023). "When a military judge abuses his discretion denying a continuance . . . , the reviewing court will not grant relief unless the appellant suffers prejudice." *Jacinto II*, 81 M.J. at 354 (citing Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012)). That is, the error must "materially prejudice[] the substantial rights of the accused." Article 59(a), UCMJ. "Where no harmful consequence resulted from denial of a continuance, there is no ground for complaint . . . ." *United States v. Kinard*, 21 C.M.A. 300, 306, 45 C.M.R. 74, 80 (1972) (citation omitted) (internal quotation marks omitted) (discussing the denial of a continuance in the context of withdrawal and replacement of counsel); *see also United States v. Wellington*, 58 M.J. 420, 423, 425 (C.A.A.F. 2003) (assuming the military judge abused his discretion in denying the motion for a continuance after the government's untimely provision of the victim's medical records, but concluding the appellant was not prejudiced as demonstrated by the trial defense counsel's effective cross-examination of the victim's doctors).

---

[4] E.B., as Amicus Curiae, disagrees with the CCA's conclusion that the military judge erred when he denied the continuance, but E.B. confines her discussion to prejudice because this Court granted review of the prejudice issue. Because there is consensus that prejudice is the only issue before this Court, we simply evaluate the question of prejudice.

Here, the military judge's erroneous denial of the defense request for a continuance was harmless. We now know that E.B. did not exhibit signs of psychotic agitation and she was not administered Thorazine. Therefore, a continuance would not have given Appellant's trial defense counsel any substantive new material to attack E.B.'s credibility. More specifically, there was insufficient evidence in E.B.'s hospital records for the defense to develop and pursue a psychotic agitation defense even if the defense had more time prior to trial to examine those records. As such, there was "no harmful consequence [that] resulted from [the] denial of a continuance" and therefore the error was harmless. *Kinard*, 21 C.M.A. at 306, 45 C.M.R. at 80 (citation omitted) (internal quotation marks omitted).

In seeking to persuade us to the contrary, Appellant presents two arguments for why he suffered prejudice. First, he argues there was prejudice to his right to present a defense because without the continuance, his defense counsel could not "investigate and integrate relevant information about E.B.'s mental state" after its "strategy was focused on E.B.'s motive to fabricate." However, there does not appear to be any substantive, admissible evidence in E.B.'s hospital records that would have helped the defense in this regard. Furthermore, evidence regarding E.B.'s conduct prior to her hospitalization was not privileged and so the defense could have developed that evidence independent of the denied motion for a continuance.

Second, Appellant argues that E.B.'s Thorazine prescription, even if it was not administered, was still relevant to a trial defense theory (that he would have made had the continuance been granted) because E.B.'s odd pre-hospital behavior exemplified "why it was necessary and appropriate to prescribe Thorazine upon her admission." However, this argument is effectively undermined by the *DuBay* judge's finding that the Thorazine prescription "was not specific to E.B.'s case or circumstances" and instead was prescribed as a precaution not only for E.B. but

for other similarly situated patients. Although Appellant does not bear the burden here, we are not persuaded by his reasoning for why there was prejudice resulting from the military judge's error.

## Conclusion

After considering the additional factfinding and after further reviewing the granted issues, we affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals.