831 F.2d 292
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cornelius James RYAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael BECKER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James E. STIVERS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory Kirk BELL, Defendant-Appellant.
 Nos. 86-5055, 86-5056, 86-5079 and 86-5090.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 7, 1987.
Decided: Oct. 1, 1987.
 
 Before WIDENER and ERVIN, Circuit Judges, and ELSWORTH A. VAN GRAAFEILAND, Senior Circuit Judge for the Second Circuit, sitting by designation.
 Spencer D. Levine (Ronald A. Dion, Entin, Schwartz, Barbakoff & Schwartz, Michael Morchower, Elizabeth Dashiell, William Cleaveland on brief) for appellants.
 Karen Breeding Peters, Assistant United States Attorney (John P. Alderman, United States Attorney on brief) for appellee.
 W.D.Va.
 AFFIRMED.
 Before WIDENER and ERVIN, Circuit Judges, and ELSWORTH A. VAN GRAAFEILAND, Senior Circuit Judge for the Second Circuit, sitting by designation.
 PER CURIAM:
 
 
 1
 On July 17, 1985, appellants, Cornelius Ryan, Michael Becker, James Stivers and Gregory Bell, and three others, George Ross, Elaine Mahan and Ralph Spencer, were indicted in the United States District Court for the Western District of Virginia, at Roanoke. They were charged in one count with conspiring with six unindicted persons, Rodrigo Posada, Alexander Dalton, George Nicholson, Jack Hoback, Charles Harlow and William Milleson, Jr., and others unnamed, to possess with intent to distribute and to distribute both cocaine and marijuana. 21 U.S.C. Secs. 841(a)(1), 846. Ryan, Becker, Stivers, Mahan and Spencer also were charged in other counts with interstate travel for the purpose of carrying on an unlawful drug enterprise. 18 U.S.C. Sec. 1952(a)(3). Ross and Spencer pled guilty. Following a jury trial before Chief Judge James Turk, appellants and Mahan were convicted of conspiracy to possess cocaine with intent to distribute. Appellant Bell also was found guilty of conspiracy to possess marijuana with intent to distribute. Ryan, Becker, Stivers and Mahan were convicted on the Travel Act counts.
 
 
 2
 Viewed in the light most favorable to the Government, the evidence clearly establishes the existence of the drug conspiracy with which appellants were charged. The conspirators dealt principally with cocaine, most of which was smuggled into Florida by Posada, although Bell was an alternate Florida source when Posada was unavailable. Nicholson, Harlow and Milleson usually acted as first-tier middlemen in the distribution of the cocaine, and the remaining coconspirators generally were second-tier distributors. Although Bell sold cocaine, he dealt principally in marijuana. He both sold it to, and traded it for cocaine with, other members of the conspiracy. There is ample proof that appellants were members of the conspiracy. The proof on the Travel Act counts is equally convincing. Accordingly, because we find no merit in the procedural and evidentiary arguments that appellants raise on appeal, we affirm.
 
 
 3
 Although appellants filed a joint brief and reply brief, only two arguments contained therein are common to the four parties.[1] Their principal contention is that the proof established the existence of two separate conspiracies, one involving cocaine and the other marijuana. It is well settled, however, that a conspiracy may have diverse objectives, Braverman v. United States, 317 U.S. 49, 54 (1942), and this of course is true of drug conspiracies. Because drug traffickers may deal with more than one narcotic, it follows that conspiracies among traffickers may, as here, also involve more than one illegal substance. The Government was entitled to allege and prove the single multiobjective conspiracy that actually existed. See United States v. Alvarez, 735 F.2d 461, 465 (11th Cir.1984); United States v. Barlin, 686 F.2d 81, 89 (2d Cir.1982). The district court carefully instructed the jurors that, in order to convict any defendant, the jurors had to find that the single conspiracy charged in the indictment existed and that the defendant was a member of that single conspiracy. See United States v. Cambindo Valencia, 609 F.2d 603, 625 (2d Cir.1979), cert. denied, 446 U.S. 940 (1980). Even if the jury erred in its finding of a single conspiracy, appellants would not be entitled to a new trial unless they could show that they were prejudiced. Berger v. United States, 295 U.S. 78, 82 (1935). The special verdicts which the district court secured precluded any such claim. The jury demonstrated through these verdicts that it was able to distinguish Bell's activities from those of his coconspirators. The jury found that, while Bell trafficked in both cocaine and marijuana, Ryan, Becker and Stivers trafficked only in cocaine. Clearly, there was no prejudicial spillover from Bell's conviction to those of his coconspirators.
 
 
 4
 In their second joint argument, appellants contend that the district court erred in instructing the jury that it must find that a conspiracy existed and that a defendant was a member of it before the defendant could be bound by the acts or statements of his alleged coconspirators. Appellants argue that this was "in total derogation of the trial court's legal obligation to determine the admissibility of coconspirator declaration evidence." (Appellants' Brief at 25). This argument demonstrates a misconception of the relative role of judge and jury in determining the binding effect of this otherwise-hearsay testimony. In order that a trial proceed with a reasonable degree of order and coherence, the court, applying a "fair preponderance of evidence" test, may admit statements of persons whom it believes will be found to be coconspirators. However, the ultimate determination as to the binding effect of the admitted statements must of necessity rest with the jurors, to whom is assigned the task of making the predicate factual finding of coconspiracy beyond a reasonable doubt. We may conclude that the district judge made tacit determinations of admissibility in the instant case from the fact that he admitted the testimony. United States v. Scott, 730 F.2d 143, 148-49 (4th Cir.), cert. denied, 469 U.S. 1075 (1984).
 
 
 5
 Three of the arguments in the joint brief are primarily Bell's alone. Bell was represented in the trial by Attorney Lane Vaughn and his "co-counsel" Joseph Sharit. The case went to trial on Monday, January 6, 1986. The next morning, Vaughn told Judge Turk that he had to have a recess because he was ill and had to go see a doctor. The court took a short recess, following which Sharit reported that Vaughn had been admitted to the hospital and didn't know how long he would be there. The court then excused the jury until Thursday morning. In the meantime, Judge Turk called the doctor, who informed him that there was nothing seriously wrong with Vaughn and that Vaughn had not been admitted to the hospital. The doctor also told Judge Turk that he knew of no reason why Vaughn could not be in court trying the case. Accordingly, the trial was resumed on Thursday.
 
 
 6
 However, on the following Tuesday, when the last Government witness was on the stand identifying telephone numbers, Vaughn told Judge Turk that Vaughn's father had had a heart attack and that Vaughn wanted to go home. Judge Turk told Vaughn that it was up to Vaughn and Bell to decide whether Vaughn should leave, but that the court was going ahead with the trial and that one of Bell's attorneys would have to be present. Vaughn left without even telling Judge Turk that he was going. The court then denied Sharit's motion to sever Bell's case, telling Sharit, "[I]t's obvious to the court that Mr. Vaughn has tried to delay or sever this case from the very beginning."
 
 
 7
 The docket sheet shows that Bell had subpoenaed no witnesses, and he himself did not testify. Sharit's sole task therefore was to inquire briefly of the Government's last witness about certain telephone records and to sum up. The district court recognized that Sharit ably represented Bell in this assigned task, and, having read Sharit's summation, we agree. Nonetheless, Bell's appellate counsel contends that Bell's conviction must be reversed because he was deprived of counsel of his choice when Vaughn left. Although, as a general rule, a defendant who is deprived of the right to counsel of his choice need not show prejudice in order to be entitled to a new trial, Flanagan v. United States, 465 U.S. 259, 268 (1984), the right to specific counsel is not absolute at all times and under all circumstances. Other factors may be considered and weighed in the sound discretion of the trial court, including the status of the litigation, the convenience of the court and witnesses, the availability of other competent counsel, the complexity of the case, etc. Any other rule would create an automatic vehicle for a defendant to obtain a severance and delay of his trial merely by arranging for his "chosen" counsel to become ill or otherwise unavailable if the trial has not been going well. Counsel may absent himself and the defendant, as here, may then inform the court that he does not want to be represented by anyone else. Apparently this is what Judge Turk had in mind when, speaking of Vaughn, he said "[M]ost attorneys do not act in this court like he has acted." Because Bell suffered no prejudice as a result of Vaughn's departure, the district court correctly denied Bell's motion for a new trial. See United States v. McManaman, 653 F.2d 458, 459-61 (10th Cir.1981); Lofton v. Procunier, 487 F.2d 434, 435 (9th Cir.1973); Giacalone v. Lucas, 445 F.2d 1238, 1240-43 (6th Cir.1971), cert. denied, 405 U.S. 922 (1972); Rolon Marxuach v. United States, 398 F.2d 548, 550-51 (1st Cir.), cert. denied, 393 U.S. 982 (1968).
 
 
 8
 Bell's second and third arguments are based on the admission of evidence that he had been in possession of marijuana in New Orleans, packaged in boxes that were uniquely similar to those he had delivered to coconspirators in the instant case. Bell was tried in New Orleans for possessing with intent to distribute 293 boxes of marijuana and for conspiring to import and possess with intent to distribute them. The jury acquitted him on the conspiracy count but deadlocked on the possession count. Bell contends that the Government was collaterally estopped from asserting facts in the instant case that were decided against it in the New Orleans trial. However, that is not what the Government did. It proved only that Bell possessed marijuana in New Orleans, and it was on the charge of possession that the New Orleans jury deadlocked. There is a clear distinction between simply possessing marijuana with intent to distribute and conspiring with others to import and possess it with intent to distribute. Acquittal of Bell on the conspiracy counts therefore did not preclude the Government from subsequently proving the fact of possession.
 
 
 9
 Bell argues alternatively that, if the evidence was correctly admitted under Rule 404(b) of the Federal Rules of Evidence, the district court failed to charge the jury concerning the limited purpose for which it was admitted. This contention is specious. The district court correctly instructed the jury on this point on at least four occasions.
 
 
 10
 Equally without substance is appellant Becker's argument that because there is nothing in the record to indicate that he distributed the cocaine which he purchased from Nicholson, he was not a proven coconspirator. The suggestion that Becker purchased two kilos, or over $100,000 worth, of cocaine for his personal use borders on the ridiculous. Becker asked Ross to introduce him to Nicholson so that Becker could be introduced to the cocaine business, and he paid Ross a $700 finder's fee for doing this. Moreover, Becker had the aid of an associate in handling his end of the business. Becker's participation in the ongoing conspiracy was substantially greater than the "slight connection" this Court holds to be sufficient. See United States v. Laughman, 618 F.2d 1067, 1076 (4th Cir.), cert. denied, 447 U.S. 925 (1980).
 
 
 11
 The final argument in appellants' brief, made on behalf of Stivers, barely merits comment. At the end of the charge, Stivers' counsel told Judge Turk that he had a request pertaining to the fact that Stivers had admitted using marijuana. The judge responded that he already had told the jurors that Stivers was not on trial for any offense not alleged in the indictment and that he didn't think he ought to mention it again "because it might just call their attention to it more." Counsel responded, "That's true, sir", and that ended the discussion. It also disposes of Stivers' claim of reversible error.
 
 The judgments of conviction are
 
 12
 AFFIRMED.
 
 
 
 [1]
 Appellant Bell was permitted to file a post-argument, pro se brief, which the Court has considered